UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS ROBINSON,

              Petitioner,              Case No. 4:16-cv-11738
                                                   Hon. Terrence G. Berg
v.

THOMAS WINN,

              Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING A CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S FIRST CLAIM, (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS, AND (4) GRANTING PETITONER'S COUNSEL'S MOTION TO WITHDRAW (DKT. 7)**

       This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Marcus Robinson was convicted after a jury trial in the Kalamazoo Circuit Court of second-degree murder, MICH. COMP. LAWS 750.317, assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS 750.84, three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS 750.227b, felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and carrying a concealed weapon, MICH. COMP. LAWS 750.227. He was sentenced to 45 to 75 years for the murder conviction, consecutive two-year terms for the felony-firearm convictions, and lesser concurrent terms for the other convictions.

       The petition raises two claims: (1) Petitioner was denied the effective assistance of counsel when his trial attorney failed to request a jury instruction

regarding the defense of accident, and (2) the trial court erred in failing to instruct the jury on the lesser offense of involuntary manslaughter. The Court will deny the petition because Petitioner's claims are without merit. The Court will, however, grant Petitioner a certificate of appealability with respect to his first claim, and it will grant him permission to proceed on appeal in forma pauperis. Petitioner will be denied a certificate of appealability with respect to his second claim. Finally, Petitioner's counsel's motion to withdraw (Dkt. 7) will be granted.

I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant and his friend, Cortez Howard, met the victims, Jared Boothe and Brian Tolson, in an apartment complex parking lot to talk about a situation involving Howard, Boothe's younger brother, and a female friend. Prior to the meeting, Howard told defendant that he was friends with the victims and that he did not expect any violence at the meeting. Howard also told defendant that neither of them needed to bring a gun to the parking lot meeting.
>
> Nevertheless, defendant had heard that Boothe and Tolson were looking for him and that one of them might have had a gun. Defendant and Howard arrived with two other friends, who stayed in a nearby car. Defendant and Howard approached Boothe and Tolson, and defendant pulled out his gun and flashed it at Boothe during the encounter.
>
> Boothe began to walk away from the parking lot, and defendant followed him. Tolson then told defendant not to "creep up" on his brother. Tolson then asked defendant, "what are you going to do, shoot me[?]" Defendant responded, "I will, but don't make me have to." Tolson thereafter jumped and grabbed defendant. During the altercation, defendant shot Tolson in the chest, causing his death. Defendant claimed that prior to his discharge of the gun, Tolson picked him up and

> slammed him into the ground.
>
> Boothe then punched the defendant in the head several times and attempted to pick him up and slam him on the ground. The defendant ended up landing on top of Boothe. The gun fired again, hitting Boothe in the chest, but not killing him. After the shootings, defendant got back in the car and drove away while flashing his gun at the victims.

*People v. Robinson*, No. 314906, 2014 WL 4930702 WL, at *1 (Mich. Ct. App. Oct. 2, 2014).

Following his conviction Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate brief combined his two habeas claims into a single claim:

> I. The trial court reversibly erred in denying the defense request for an instruction on involuntary manslaughter, as that is a necessarily included lesser offense of first degree murder, the defense presented sufficient evidence putting the issue of Mr. Robinson's intent and state of mind into issue, and the jury may well have convicted Mr. Robinson only of involuntary manslaughter as they had a reasonable doubt as to the charged offense of premeditated murder. In addition, Mr. Robinson was denied a fair trial where the trial judge failed to sua sponte instruct the jury on the law of accident, as that was a crucial issue in the homicide charge, or, in the alternative, he was denied his Sixth Amendment right to effective assistance of counsel due to his trial attorney's failure to request an accident instruction.

The Michigan Court of Appeals affirmed Petitioner's convictions in a 2-1 unpublished opinion. *Robinson*, 2014 WL 4930702. The dissenting judge found that the trial court erred in failing to instruct the jury on involuntary manslaughter and accident.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court

3

denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Robinson*, 862 N.W.2d 652 (Mich. 2015) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas corpus action if the claims were rejected on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

Demonstrating that a state court unreasonably applied clearly established Supreme Court law is no easy task because "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

### III. Analysis

A. Ineffective Assistance of Counsel

Petitioner's first claim asserts that he was denied the effective assistance of trial counsel. Petitioner argues that his attorney performed deficiently when he only pressed a claim of self-defense and failed to seek a jury instruction on the alternative defense of accident after the evidence presented at trial suggested that the shooting was accidental. The Michigan Court of Appeals rejected the claim on the merits, and Respondent maintains that the appellate court's adjudication was reasonable.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance

resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

After reciting the appropriate constitutional standard, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> The evidence clearly established that defendant acted with malice. An accident theory was thus not applicable, and defense counsel was not unreasonable for failing to take a position that one should be given. See *People v. Fonville*, 291 Mich. App. 363, 384 (2011) (quotation marks and citation omitted) ("[t]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile."). The defense counsel argued that the gunshot was accidental, and he requested a self-defense instruction, which was the main defense theory at trial. "A defendant who argues self-defense implies his actions were intentional but that the circumstances justified his actions." *People v. Wilson*, 194 Mich. App. 599, 602 (1992).
>
> Thus, a self-defense argument is inconsistent with an accident argument where a defendant argues that a gunshot was unintentional and accidental. Although "a defendant in a criminal matter may advance inconsistent claims and defenses[,]" *People v. Cross*, 187 Mich. App. 204, 205-206 (1991), failing to request an instruction when it is inconsistent with a defense theory is a matter of trial strategy, *People v. Gonzalez*, 468 Mich. 636, 645 (2003). "[W]e will not second-guess strategic decisions with the benefit of hindsight." *People v. Dunigan*, 299 Mich. App. 579, 590 (2013). In addition, further instruction on accident may have confused the jury because it would have been inconsistent with defendant's self-defense argument. *Gonzalez*, 468 Mich. at 645.

> Defendant also has not established prejudice. *Carbin*, 463 Mich. at 600. The jury had to find that defendant possessed some form of intent to establish the malice required for second degree murder. Thus, the jury inherently rejected the notion that defendant's act in shooting the gun was unintentional or accidental.

*Robinson*, 2014 WL 4930702, at *4.

While the evidence presented at trial would seem at a minimum to have permitted an alternative argument for defense counsel that an accident instruction should have been given, the final rationale relied upon by the Michigan Court of Appeals—that Petitioner was not prejudiced by the absence of the instruction—was not an unreasonable application of the *Strickland* standard.

The evidence presented at trial indicated that Ezell Boothe, Jared Boothe's younger brother, was angry because a sixteen-year-old girl was spending too much time with Cortez Howard. The day prior to the shooting, Howard flashed a handgun at Ezell when Howard retrieved the girl from Ezell's apartment. On the evening of the shooting, Howard agreed to meet with Jared Boothe at the apartment complex to discuss the incident. Petitioner drove Howard to the apartment complex, and Tolson accompanied Boothe.

Eye-witnesses gave roughly consistent accounts at trial of what happened when the four men met in the parking lot. All of the witnesses indicated that Jared and Howard started talking about the prior incident when Howard flashed the gun and the discussion became heated. Petitioner sought to separate the two men by putting his arm between them. Jared testified that he then saw Petitioner pull a

7

handgun out from his waistband, which prompted Jared to walk away. Howard testified that he heard Jared state he was going to get his brothers, and Howard took that to be a threat. Petitioner testified that he heard Jared say that he was going to get a gun. Petitioner admitted at trial that he drew his gun after trying to separate the men, but only after hearing Jared say he was going to retrieve his own gun.

The witnesses agreed that almost immediately after Petitioner pulled out his gun, Tolson grabbed Petitioner in a bear hug and slammed him to the ground. Tolson was 6'2" tall and weighed about 330 pounds, while Petitioner was 6' tall and weighed 164 pounds. Petitioner explained, "He landed on top of me and the impact from me – as soon as we fell, the gun – that is when the gun went off. I never shot him, the gun went off. As he – as he slammed me to the ground." Dkt. 5-8, at 1331. Petitioner testified, "I never pointed the gun at no one." Id., at 1329. Tolson was struck once in the chest with a bullet, killing him.

Jared Boothe testified that he was walking away from the parking lot with his back turned when he heard the gunshot that killed Tolson. Boothe then ran up behind Petitioner, struck him with his fists several times on the back and head, and then grabbed him around the waist and threw him to the ground again. Boothe ended up on the ground on his back with Petitioner lying on top of him, but facing away. The gun then discharged again, hitting Boothe in the chest area. Boothe testified that Petitioner never turned towards him, and that he did not know how the gun fired. Petitioner testified that when Boothe slammed him into the ground

8

he tried to fire a warning shot into the ground. Petitioner also testified that he was very scared during the entire incident, fearing that Boothe or Tolson might have a gun, or would get other men to help them beat him and Howard. Id., at 1325, 1334-1335, 1352-1353.

Accordingly, the evidence presented at trial lent support to both an accident and a self-defense claim. As for the accident claim, Petitioner clearly testified that the gun discharged accidentally when Tolson slammed him to the ground, and he testified that Booth was struck unintentionally when he attempted to fire a warning shot into the ground. None of the eyewitnesses testified that they saw Petitioner intentionally shoot either victim. As for a self-defense claim, Petitioner testified that he pulled out his gun in response to Boothe's statement that he was going to go get his gun. Petitioner further testified that he was afraid during the whole incident that the victims might be armed or planning to attack him and Howard.

Therefore, while it is true, as the Michigan Court of Appeals stated, that self-defense and accident are normally mutually exclusive defenses because the former requires an intentional shooting while the later concerns an unintentional shooting - that was not the situation presented here. Petitioner's defense, as presented through his own testimony, was that his initial act of pulling out his gun was justified as an act of self-defense because he thought one of the victims might be armed or going to get a gun, or that the other men were going to attack him. But as for the gunshots themselves, Petitioner claimed first that the gun discharged accidentally when he was thrown to the ground by Tolson, and second that a bullet

9

accidentally struck Boothe when Petitioner attempted to fire a warning shot after Boothe attacked him. Accordingly, in the specific circumstances of this case, Petitioner's defense encompassed aspects of both accident and self-defense.

Given the evidence presented at trial, particularly Petitioner's own testimony, the Court cannot discern any legitimate strategic reason for defense counsel not to have requested an accident instruction. It is true that defense counsel leaned on self-defense in closing argument. Counsel outlined the escalating tensions between the two groups of men prior to the shooting, and reasoned, "Was [Petitioner's] fear of an escalation reasonable? Damn sure it was." Dkt. 5-8, at 1390. He indicated Petitioner testified that one of the victims was going to arm himself with a gun, and he "was afraid when he went to the scene on April 22; so afraid that he had a gun." Id., at 1390-92. Counsel also argued that it was "[u]ncontroverted, uncontested that both of those gentlemen attacked [Petitioner] before they got shot. But for them attacking them, the gun would not have gone off." Id., at 1394. These are clearly self-defense arguments.

At the same time, defense counsel advanced the argument that the shot that killed Tolson was accidental. Counsel stated, "[t]he physical evidence shows that the gun went off pressed against Tolson. . . . There is no way that could be done intentionally, just physically impossible to have a gun turned in this manner, this was and then pop. It is just not possible." Id. 1393. In light of this prong of Petitioner's defense, it is difficult to see why defense counsel failed to request a jury instruction on accident. Contrary to the majority opinion of the Michigan Court of

Appeals, I do not believe such an instruction would have confused the jury at all. Arguing that the gunshots were accidental is not inconsistent with arguing that gun was initially drawn in self-defense. Such a two-sided defense was rather straight-forward and would not have confused the jury: Petitioner pulled out his gun in self-defense because he was afraid for his safety, but the gun discharged accidentally when the victim threw him to the ground.

Nevertheless, the question is whether the Michigan Court of Appeals unreasonably applied the *Strickland* prejudice standard in rejecting Petitioner's claim. The trial court instructed the jury that the prosecutor was required to prove each element of the charged crimes beyond a reasonable doubt, and that if any of the elements were not proven beyond a reasonable doubt, they must find Petitioner not guilty of the charge. Id., at 1408.

With respect to the elements of the crimes for which Petitioner was convicted, the trial court instructed the jury as follows:

> You may also consider the lesser charge of second degree murder within count one. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant caused the death of Brian Tolson, that is, that Brian Tolson died as a result of the Defendant shooting him. Second, that the Defendant had one of these three states of mind. He intended to kill. Or he intended to do great bodily harm to Brian Tolson. Or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely results of his actions. Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.

Id., at 1416-17.

You may also consider the lesser charge of assault with intent to do great

11

> bodily harm less than murder within count three. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant tried to physically injure Jared Boothe. Second, that at the time of the assault, the Defendant had the ability to cause an injury or at least believed that he had the ability. Third, that when the Defendant -- I'm sorry, that the Defendant intended to cause great bodily harm. Actual injury is not necessary, but if there was an injury, you may consider it as evidence in deciding whether the Defendant intended to cause great bodily harm.

Id., at 1420.

The jury found Petitioner guilty of these two charges. By doing so, it necessarily had to find beyond a reasonable doubt that as to Brian Tolson, Petitioner either "intended to kill[,] . . . [or] intended to do great bodily harm[,] . . . [or] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely results of his actions." In finding Petitioner guilty of the assault charge, the jury necessarily had to find that Petitioner "tried to physically injure Jared Boothe. . . . [and] that the [Petitioner] intended to cause great bodily harm." For the jury to find such intentional conduct beyond a reasonable doubt on both of these counts, it follows necessarily that the jury found that the shootings were not accidental. Under Michigan law, a finding of any of the three mental states negates an accident defense. *See People v. Hawthorne*, 474 Mich. 174, 185 (2006).

To be sure, a jury instruction on accident would have been helpful in that it specifically clarifies for the jury that "if the defendant did not mean to [pull the trigger], then he is not guilty of murder. The prosecutor must prove beyond a reasonable doubt that the defendant [possessed the required mens rea]." See Mich.

12

Crim. Jury Inst. 7.1. But logically speaking, the instruction does no more than provide one example of how a killing can occur without the requisite mental state for murder or assault. If Petitioner's jury followed the court's instructions, as this Court must presume it did, see *Richardson v. Marsh*, 481 U.S. 200, 211(1987), it necessarily found that the shooting was not accidental by finding beyond a reasonable doubt that Petitioner acted with malice for the murder charge and with intent for the assault charge.

Because the Court must presume that the jury found beyond a reasonable doubt that Petitioner acted with malice when the first shot was fired and with intent to injure when the second shot was fired, there is no reasonable probability that the result of the proceeding would have been more favorable to Petitioner had the jury been specifically instructed on the defense of accident. Again, strictly speaking, such an instruction would have been superfluous given that the jury was instructed on the prosecutor's burden of proving beyond a reasonable doubt that Petitioner acted with malice for the murder charge and intent for the assault charge. At a minimum, in light of the proper instructions regarding the elements of the charged offenses, it was not an objectively unreasonable application of the *Strickland* prejudice standard for the Michigan Court of Appeals to reject Petitioner's claim.

B. Involuntary Manslaughter Instruction

Petitioner's second claim asserts that the trial court erred in failing to instruct the jury on the lesser offense of involuntary manslaughter.

After the prosecution case concluded, defense counsel moved to have the jury instructed on involuntary manslaughter as a lesser included offense. The trial court found the evidence did not support an involuntary manslaughter instruction. Dkt. 5-8, at 1367-68. The Michigan Court of Appeals agreed, finding:

> Defendant testified that he did not pull out his gun until one of the individuals at the scene walked away and stated that he was going to retrieve his gun, although there was other evidence indicating that defendant brandished his own gun earlier. There was further evidence that the murder victim then spoke some words to defendant before the victim jumped on defendant and slammed defendant to the ground. Defendant testified that his gun discharged during the ensuing struggle, ultimately resulting in the victim's death. Defendant insisted that he did not intentionally shoot the victim. In the context of the situation, we cannot conclude that defendant's conduct in simply bringing his gun to the scene and displaying it amounted to gross negligence. Perhaps had defendant, with gun in hand, instigated the tussle with the victim, we might be prepared to rule that defendant acted in a reckless or wantonly indifferent manner, i.e., in a grossly negligent manner, by deciding to physically wrestle with the victim with a gun in defendant's hand. But none of the evidence suggested that defendant decided to engage in a struggle with the victim. At most, the evidence merely reflected that defendant was holding a gun and the victim jumped on him, leading to the unintentional discharge of the firearm. In those circumstances, the trial court's determination that an instruction on involuntary manslaughter was not supported by the facts in evidence did not constitute an abuse of discretion. *People v. Gillis*, 474 Mich. 105, 113 (2006). No rational view of the evidence could support a finding of gross negligence, and "the trial court did not err in denying defendant's request for the jury to be instructed on involuntary manslaughter." *McMullan*, 488 Mich at 922.

*Robinson*, 2014 WL 4930702, at *3.

Petitioner's claim cannot form the basis for granting habeas relief because it is not supported by clearly established Supreme Court law. The United States Supreme Court has declined to determine whether the Due Process Clause requires

14

a state trial court to instruct a jury on a lesser included offense in a non-capital case. See *Beck v. Alabama*, 447 U.S. 625, 638, n. 4 (1980). A state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case therefore cannot run contrary to, or amount to an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id.*; See also *David v. Lavinge*, 190 F. Supp. 2d 974, 986, n. 4 (E.D. Mich. 2002). The Sixth Circuit has interpreted *Beck* to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F. 3d 531, 541 (6th Cir. 2001). The failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is thus not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); see also *Scott v. Elo*, 302 F. 3d 598, 606 (6th Cir. 2002).

Even though second-degree murder can result in a life sentence, Petitioner was not facing a capital conviction within the meaning of *Beck* that would entitle him to a jury instruction on any lesser included offenses. In *Scott v. Elo*, the Sixth Circuit held that a criminal defendant who had been convicted of first-degree murder in Michigan and had been sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter. 302 F. 3d at 606. In so ruling, the Sixth Circuit characterized the defendant's first-degree murder charge as a conviction for a noncapital offense. *Id*. Accordingly, Petitioner's claim that he was entitled to lesser offense instructions in his non-capital case does not present a

cognizable claim for relief under section 2254(d).

As both of Petitioner's claims lack merit, the petition will be denied.

## IV. Motion to Withdraw

Petitioner's counsel has filed a motion to withdraw (Dkt. 7). Under the Model Rules of Prof'l Conduct R. 1.16(b):

> [A] lawyer may withdraw from representing a client if: . . .
>
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
>
> (7) other good cause for withdrawal exists.

Although these rules do not guarantee a right to withdraw, "they confirm that withdrawal is presumptively appropriate where the rule requirements are satisfied." *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009).

Petitioner's attorney claims that Petitioner has failed to pay outstanding fees that are owed for legal services rendered. Petitioner failed to respond to the motion. Petitioner's attorney is entitled to withdraw from representation due to Petitioner's failure to pay legal fees. *Brandon*, 560 F.3d at 538. The motion to withdraw will be granted.

## V. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of

16

appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason could debate whether the petition should have been resolved in a different manner with respect to Petitioner's first claim. The Court can discern no strategic reason for counsel to have not requested an accident instruction given the evidence presented at trial. Moreover, reasonable jurists might disagree on whether the trial court's instructions on the elements of the offenses preclude Petitioner from demonstrating *Strickland* prejudice. Accordingly, a certificate of appealability is granted with respect to Petitioner's first claim.

A certificate of appealability is denied with respect to Petitioner's second claim because the claim cannot be supported by clearly established Supreme Court law.

The Court will grant permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

VI. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ

of habeas corpus, 2) **GRANTS** a certificate of appealability with respect to Petitioner's first claim, 3) **DENIES** a certificate of appealability with respect to Petitioner's second claim, 4) **GRANTS** Petitioner's counsel's motion to withdraw [dkt. 7], and 5) **GRANTS** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: March 28, 2018

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 28, 2018, using the CM/ECF system, which will send notification to each party.

s/A. Chubb  
Case Manager