# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>Deborah S. Hunt<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed: August 21, 2019

Mr. Bruce H. Edwards
Mr. John S. Pallas
Mr. Daniel John Ping
Mr. David Andrew Porter
Office of the Attorney General of Michigan
P.O. Box 30217
Lansing, MI 48116

Mr. Joseph L. Hohler III
137 N. Park Street
Suite 101A
Kalamazoo, MI 49007

Office of the Attorney General
of Michigan
P.O. Box 30217
Lansing, MI 48116

Re: Case No. 18-1511, *Marcus Robinson v. Les Parish*
Originating Case No. : 4:16-cv-11738

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0440n.06

Case No. 18-1511

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARCUS ROBINSON, | ) | **FILED**<br>Aug 21, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LES PARISH, Warden, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellee, | ) | **OPINION** |
| | ) | |

BEFORE: GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Marcus Robinson appeals the district court's denial of his habeas corpus petition alleging ineffective assistance of counsel ("IAC"). His petition arises from his conviction for second-degree murder and four related offenses. Robinson argues that the Michigan Court of Appeals unreasonably applied *Strickland* when it denied him relief on his IAC claim. We disagree and affirm the district court's ruling.

I.

In April 2012, Marcus Robinson and his friend, Cortez Howard, met Jared Boothe and Brian Tolson in the parking lot of an apartment complex. The purpose of the meeting was to discuss a situation involving Boothe's younger brother and a female friend. Before the meeting, Howard told Robinson that they should not expect violence because Howard was friends with Boothe and

Tolson. Howard also told Robinson that neither of them needed to carry a gun to the meeting. But Robinson thought Boothe might bring a gun, so he decided to carry one anyway.

Sure enough, Robinson drew his gun and flashed it at Boothe during the meeting. The two exchanged words before Boothe began to walk to his apartment. Still wielding the gun, Robinson started to follow Boothe before Tolson told him not to "creep up" on his brother. [Trial Tr. IV, R. 5-6, at PageID #2417.] Tolson then asked Robinson, "what are you going to do, shoot me[?]" [Trial Tr. V, R. 5-7, PageID #2846.] Robinson responded, "I will, but don't make me have to." [*Id.*] At that point, Tolson grabbed Robinson and tried to slam him to the ground. During this altercation, Robinson shot Tolson in the chest, causing his death.

Upon seeing Tolson shot on the ground, Boothe punched Robinson in the head several times and attempted to slam him to the ground. Robinson eventually landed on top of Boothe and shot him, also in the chest (although Boothe survived). Robinson then returned to the car and brandished the gun at his victims as he drove away.

In January 2013, a Michigan jury convicted Robinson of second-degree murder; assault with intent to do great bodily harm less than murder; three counts of possession of a firearm during the commission of a felony; being a felon in possession of a firearm; and carrying a concealed weapon. He received a prison sentence of 45 to 75 years for second-degree murder, and lesser concurrent terms for the remaining convictions.

Robinson appealed his conviction to the Michigan Court of Appeals. *See People v. Robinson*, No. 314906, 2014 WL 4930702 (Mich. Ct. App. Oct. 2, 2014) (per curiam). He first argued that the trial court erred in refusing to instruct the jury on involuntary manslaughter. But the court rejected that argument after concluding that the "facts inescapably showed that [he] acted with malice." *Id.* at *1. Robinson next argued that the trial court erred in failing to sua sponte

No. 18-1511, *Robinson v. Parish*

instruct the jury on accident. The court rejected this argument as well, reasoning that he had waived it by agreeing to the final jury instructions. Finally, Robinson argued that his trial counsel was ineffective for failing to request the accident instruction. The court disagreed (over a dissent), finding that counsel's performance was neither professionally deficient nor prejudicial to Robinson. It therefore affirmed Robinson's conviction and rejected his IAC claim. Later, the Michigan Supreme Court denied Robinson's appeal for discretionary review.

In May 2016, Robinson filed a federal habeas petition under 28 U.S.C. § 2254, raising two claims: (1) that he was denied his right to effective assistance of counsel under the Sixth Amendment when his trial attorney failed to request a jury instruction on accident, and (2) that the trial court erred in failing to instruct the jury on the lesser offense of involuntary manslaughter. The district court denied his petition and granted a certificate of appealability for only the first claim. *Robinson v. Winn*, No. 4:16-CV-11738, 2018 WL 1522437, at \*8 (E.D. Mich. Mar. 28, 2018).

## II.

The Supreme Court has described ineffectiveness claims as raising questions of mixed law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). In this context, we review the district court's judgment on such questions de novo. *E.g.*, *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013). And because Robinson's habeas petition arises from state court, our review necessarily encompasses the state court's decision too. *See id.*

If a state court dismisses a defendant's IAC claim on the merits, a federal court should review the state court's determinations under the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d)(1). In this case, there is no dispute that the Michigan Court of Appeals adjudicated Robinson's claim on the merits.

Page **3** of **8**

No. 18-1511, *Robinson v. Parish*

AEDPA precludes a federal court from granting relief unless the state court's decision was "contrary to" or "involved an unreasonable application of" clearly established federal law, 28 U.S.C. § 2254(d)(1), or it "resulted in a decision that was based on an unreasonable determination of the facts," *id.* § 2254(d)(2). Robinson argues that the state court's decision was an unreasonable application of Supreme Court precedent. A state-court decision "involve[s] an unreasonable application of" federal law if it correctly identifies the governing legal principle from Supreme Court precedent but unreasonably applies that principle to the case. *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000). Moreover, for a federal court to grant relief, the state court's application must have been "objectively unreasonable" and not simply "incorrect." *Id.* at 409-10.

The Supreme Court set down the governing legal principle for IAC claims in *Strickland*: "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. To that end, *Strickland* sets forth a two-prong test for determining when a defendant can establish a viable IAC claim: The defendant must show (1) that counsel's performance was *deficient*, and (2) that such deficiency *prejudiced* the defense. *Id.* at 687. Failure to satisfy either prong is fatal to an IAC claim. *See id.* Thus, if it is easier for a court to dispose of an IAC claim on the second prong, as here, we should generally follow that course. *See id.* at 697.

The Supreme Court has stressed that the standards created by *Strickland* and § 2254 are both highly deferential, and "when the two apply in tandem, deference is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101

No. 18-1511, *Robinson v. Parish*

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Properly applying AEDPA deference ensures that "state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.* at 103.

The question before this court, therefore, is whether the state court's application of *Strickland* was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *See id.*

## III.

Robinson argues that his counsel was constitutionally deficient for not requesting an accident instruction along with a self-defense instruction. According to Robinson, this is because evidence in the record suggested that he did not intend to shoot Tolson; instead, the gun accidentally discharged. In dismissing Robinson's IAC claim, the Michigan Court of Appeals concluded that "based on this chain of events," Robinson's conduct constituted a "malicious series of *intentional* acts." *Robinson*, 2014 WL 4930702, at *2 (emphasis added). And it determined that defense counsel asked for a self-defense instruction instead of an accident instruction because self-defense better matched the defense's theory of the case: that Robinson acted *intentionally* but *justifiably* when he shot Tolson. *Id.* at *3. Accordingly, the court held that "an accident argument where a defendant must argue that the gunshot was *unintentional* and accidental" was "not applicable." *Id.* (emphasis added).

To be sure, the court also acknowledged that "a defendant in a criminal matter may advance inconsistent claims and defenses." *Id.* (quoting *People v. Cross*, 466 N.W.2d 368, 369 (Mich. Ct. App. 1991)). But it responded with two points. First, it noted that "failing to request an instruction when it is inconsistent with a defense theory is a matter of trial strategy." *Id.* (citing *People v.*

No. 18-1511, *Robinson v. Parish*

*Gonzalez*, 664 N.W.2d 159, 164 (Mich. 2003)). The court explained that defense counsel's main theory at trial was self-defense and, given that self-defense is a defense based on (justifiable) intent, the court reasoned that it would have been "inconsistent" to ask for both a self-defense instruction and an accident instruction. *Id.* As such, the court refused to question counsel's choice between these defenses with the benefit of hindsight. Second, the court reinforced its view that counsel's choice was one of professional judgment by explaining that requesting both accident and self-defense instructions might have risked confusing the jury. *Id.*

Ultimately, however, we need not decide whether counsel's performance was constitutionally deficient. That is because the prejudice analysis here is far more straightforward. *Strickland*, 466 U.S. at 697. To prove prejudice under *Strickland*, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* This requires "a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112). And because the Michigan Court of Appeals determined that Robinson was not prejudiced by counsel's performance, he must do more than surmount this already deferential standard. He must also show that the court's determination of this issue was objectively unreasonable. *Williams*, 529 U.S. at 409-10. Robinson has made no such showing here.

As the Michigan Court of Appeals explained, the jury had to find that Robinson "possessed some form of intent to establish the malice required for second-degree murder." *Robinson*, 2014 WL 4930702, at *4. "Thus, the jury inherently rejected the notion that defendant's act in shooting the gun was unintentional or accidental." *Id.* And absent a challenge to the sufficiency of evidence, we presume that the "jury acted according to [the] law." *Strickland*, 466 U.S. at 694.

No. 18-1511, *Robinson v. Parish*

Moreover, we presume that the jury followed the court's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). And the jury instructions on second-degree murder stated that "if the prosecutor has not proven every element beyond a reasonable doubt, then you *must* find the Defendant not guilty." [Trial Tr. VI, R. 5-8, PageID #3132 (emphasis added).] To convict Robinson of second-degree murder, the jury had to find beyond a reasonable doubt that Robinson either "intended to kill[,] … [or] intended to do great bodily harm[,] … [or] knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely results of his actions." *Robinson*, 2018 WL 1522437, at *6. A Michigan state court's finding of any of these three mental states negates an accident defense. *See People v. Hawthorne*, 713 N.W.2d 724, 730 (Mich. 2006).

Robinson seeks to distinguish his case from *Hawthorne*, where the Michigan Supreme Court held that it was harmless error for the trial court not to instruct the jury on accident. *Id.* There, as here, the defendant was convicted of second-degree murder. *Id.* at 725. Robinson points out that, unlike in his case, the jury in *Hawthorne* was also instructed on involuntary manslaughter, "which does not require a finding of malice." *Id.* at 730. And the Michigan Supreme Court noted that the jury's vote to convict the defendant of second-degree murder despite that instruction erased any doubts about whether the defendant had the requisite intent for murder. *See id.*

Robinson's attempt to distinguish *Hawthorne* is unpersuasive. The central holding of *Hawthorne* was that the trial court's failure to instruct on accident was harmless because, as here, the jury had been instructed on second-degree murder. *Id.* The court reasoned that "[t]he jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder." *Id.*

No. 18-1511, *Robinson v. Parish*

(brackets in original). It merely bolstered that holding by observing that the jury had convicted the defendant of murder despite the instruction it received on involuntary manslaughter. *See id.*

Relatedly, Robinson argues that without the involuntary manslaughter instruction, the jury was left with no choice but to convict if they did not believe that he acted in self-defense. The flaw in this argument, of course, is that the jury did not have to convict Robinson of anything. If the evidence was insufficient for the jury to conclude that Robinson acted with one of the three necessary mental states, the court told them that "they *must* find the Defendant not guilty." (Trial Tr. VI, R. 5-8, PageID #3132 (emphasis added).) As the district court noted, "the [accident] instruction [does] no more than provide one example of how a killing can occur without the requisite mental state for murder or assault." *Robinson*, 2018 WL 1522437, at *6.

Because the jury found beyond a reasonable doubt that Robinson acted with malice when he shot Tolson, there is not a substantial likelihood that the outcome at trial would have been different had counsel requested an accident instruction. Thus, we cannot say that the Michigan Court of Appeals' determination that Robinson's IAC claim failed for lack of prejudice was objectively unreasonable.

For these reasons, the district court's judgment is AFFIRMED.